Adopted without reservation.

So Ordered.
3/30/2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

/s/ Raymond J. Dearie
U.S. DISTRICT JUDGE

-------------------------------------------------------------------X
SANTOS HERNANDEZ, FERDIS DELGADO,
and MANUEL CAMPOS, *on their own behalf*
*and on behalf of others similarly situated*,

Plaintiffs,

-against-

REPORT AND
RECOMMENDATION
18 CV 4862 (RJD)(RML)

QUALITY BLACKTOP SERVICES, INC.,
STEVEN HELLERMAN DRIVEWAYS CORP.,
JOHN DOE PRIME CONTRACTORS 1 THROUGH
10, JOHN DOE SURETY COMPANY 1 THROUGH
10, KARLINE HELLERMAN, and STEVEN
HELLERMAN,

Defendants.
-------------------------------------------------------------------X

LEVY, United States Magistrate Judge:

By order dated August 25, 2020, the Honorable Raymond J. Dearie, United States

District Judge, referred plaintiffs' motion for a default judgment to me for report and

recommendation.  For the reasons explained below, I respectfully recommend that plaintiffs'

motion for default judgment be granted as to defendants Quality Blacktop Services, Inc., Steven

Hellerman Driveways Corp., and Karline Hellerman ("defendants"), and that plaintiffs be

awarded $558,634.06 in damages, plus pre- and post-judgment interest.

## BACKGROUND AND FACTS

Defendants Quality Blacktop Services, Inc. ("Quality Blacktop") and Steven

Hellerman Driveways Corp. ("Hellerman Driveways") are both alleged to be domestic business

corporations organized and existing pursuant to the laws of New York.  (Complaint, dated Aug.

24, 2018 ("Compl."), Dkt. No. 1, ¶¶ 6-7.)  The complaint further alleges that Quality Blacktop

and Hellerman Driveways (the "corporate defendants") operated as a single entity due to the

fungible nature of their enterprise.  (Id. ¶ 10.)  Defendant Karline Hellerman is alleged to be the

Chief Executive Officer as well as an owner and agent of Quality Blacktop.  (Id. ¶ 3.)  Defendant

Steven Hellerman is alleged to be an owner and agent of Quality Blacktop and Hellerman

Driveways.  (Id. ¶¶ 4, 7.)

       Named plaintiffs Santos Hernandez, Ferdis Delgado, and Manuel Campos, on

their own behalf and on behalf of others similarly situated, commenced this wage and hour

action on August 27, 2018, asserting claims under the Fair Labor Standards Act ("FLSA"), 29

U.S.C. §§ 201, et seq. and the New York Labor Law ("NYLL").[1]  (See Compl.)  Over the next

five months, opt-in plaintiffs Manuel Tenecela Nieves, Ivan Delgado, Wilmer Reyes, and Yonis

Reyes (collectively with Santos Hernandez, Ferdis Delgado, and Manuel Campos, "plaintiffs")

filed forms indicating their consent to join the action.  (See Consent Forms, filed Sept. 19, 2018,

Sept. 23, 2018, Dec. 28, 2018, and Jan. 16, 2019, respectively, Dkt. Nos. 4, 6, 13-14.)

       Santos Hernandez was employed by defendants as a construction worker and

heavy machine operator from 2006 to July 16, 2018.  (Compl. ¶¶ 11-12; Affidavit of Santos

Hernandez, sworn to Aug. 14, 2020 ("Hernandez Aff."), annexed as part of Ex. C to the

Affirmation of Delvis Melendez, Esq., dated Aug. 24, 2020 ("Melendez Decl."), Dkt. No. 32-3,

at 7, ¶¶ 2-4.)  Ferdis Delgado worked for defendants as a machine operator from 2012 to May

---

[1] Plaintiffs have also named as defendants John Doe Prime Contractors 1 through 10 and John
Doe Surety Company 1 through 10.  However, plaintiffs have never identified or served these
defendants.  I therefore recommend that these defendants be dismissed sua sponte.  See FED. R.
CIV. P. 4(m) (requiring dismissal, absent a showing of "good cause," of claims against a
defendant who is not served within ninety days of the filing of the complaint); Trs. of United
Plant & Prod. Workers Loc. 175 Benefits Fund v. Carlo Lizza & Sons Paving, Inc., No. 16 CV
5521, 2019 WL 5699992, at *1 (E.D.N.Y. Aug. 29, 2019) ("Where a plaintiff asserts claims
against a fictitious entity, and failed to identify and serve the fictitious defendant in accordance
with Federal Rule of Civil Procedure 4(m), those claims should be dismissed.")(citing cases),
report and recommendation adopted, 2019 WL 4805044 (E.D.N.Y. Oct. 1, 2019).

2018.  (Compl. ¶ 12; Affidavit of Ferdis Delgado, sworn to Aug. 14, 2020 ("Ferdis Delgado Aff."), annexed as part of Ex. C to the Melendez Decl., Dkt. No. 32-3, at 5, ¶¶ 2-3.)  Manuel Campos was employed as "a full time laborer/raker" by defendants from approximately May 2016 to July 15, 2018.  (Compl. ¶ 13; Affidavit of Manuel Campos, sworn to Aug. 17, 2020 ("Campos Aff."), annexed as part of Ex. C to the Melendez Decl., Dkt. No. 32-3, at 3, ¶¶ 2-4.) Manuel Nieves worked for defendants from the spring of 2014 to May 15, 2018 as a full-time construction worker and mason. (Affidavit of Manuel Tenecela Nieves, sworn to Aug. 14, 2020 ("Nieves Aff."), annexed as part of Ex. C to the Melendez Decl., Dkt. No. 32-3, at 11, ¶¶ 2-4.) Ivan Delgado worked for defendants from April 17, 2014 to April 15, 2016 as a full-time construction worker and driver.  (Affidavit of Ivan Delgado, sworn to Aug. 14, 2020 ("Ivan Delgado Aff."), annexed as part of Ex. C to the Melendez Decl., Dkt. No. 32-3, at 9, ¶¶ 2-4.) Wilmer Reyes worked for defendants from April 5, 2013 to December 2018 as a full-time construction worker and machine operator.  (Affidavit of Wilmer Reyes, sworn to Aug. 14, 2020 ("Wilmer Reyes Aff."), annexed as part of Ex. C to the Melendez Decl., Dkt. No. 32-3, at 13, ¶¶ 2-4.) Yonis Reyes worked for defendants for approximately eight months in 2015 as a full-time construction laborer.  (Affidavit of Yonis Reyes, sworn to Aug. 17, 2010 ("Yonis Reyes Aff."), annexed as part of Ex. C to the Melendez Decl., Dkt. No 32-3, at 1, ¶¶ 2-4.)

In the complaint, plaintiffs allege that they each worked more than forty hours per week for defendants as construction laborers, and defendants willfully failed to pay them overtime wages.  (Compl. ¶ 18.)  Plaintiffs also allege that defendants denied them prevailing wages for the work they completed on public works projects.  (Id. ¶ 28.)  Finally, plaintiffs allege that defendants failed to provide them with the statutorily required wage statements and wage notices.  (Id. ¶¶ 67, 70.)

On October 22, 2018, defendants Steven Hellerman, Quality Blacktop, and Hellerman Driveways answered the complaint. (Answer, dated Oct. 22, 2018, Dkt. No. 10.) Defendant Karline Hellerman never answered or otherwise moved with respect to the complaint, despite having been properly served with process. [2] (See Affidavit of Service of Peter J. Guthy, sworn to Sept. 18, 2018, Dkt. No. 7.) The case proceeded with the appearing defendants. On November 15, 2018, the Honorable Arlene R. Lindsay, United States Magistrate Judge, so ordered the parties' stipulation to certify the matter as a collective action.[3] (Order, dated Nov. 15, 2018.) The parties conducted discovery while also attempting to settle the matter via mediation and settlement discussions. (See FLSA Initial Discovery and Mediation Order, dated Dec. 7, 2018, Dkt. No. 12; Order Referring the Case to Mediation, dated Mar. 8, 2019; Minute Entries, dated June 18, 2019, July 8, 2019, Oct. 2, 2019, and Mar. 12, 2020, respectively.)

At a status conference on June 18, 2020, defendants' counsel notified the court of his intention to withdraw from the case. (Minute Entry, dated June 18, 2020.) Defendant Steven Hellerman, who had declared personal bankruptcy on November 4, 2019, was no longer able to pay counsel to represent defendants. (Id.; see also Affidavit of Steven Hellerman, sworn to July 29, 2020 ("Hellerman Aff."), Dkt. No. 28-2, ¶¶ 4, 8, 11.) Steven Hellerman was advised by the court and his counsel that corporations cannot appear pro se in federal court and that failure to obtain counsel would result in the corporate defendants' default. (See Minute Entry, dated June 18, 2020; Hellerman Aff. ¶¶13-14.) On August 2, 2020, I granted defense counsel's motion to withdraw. (Order, dated Aug. 2, 2020.)

---

[2] Service was proper because the documents were served upon a person of suitable age and discretion at the individual defendant's office, place of business, and residence, and perfected by mail pursuant to N.Y. C.P.L.R. § 308(2).

[3] This case was reassigned to me on March 8, 2019.

Steven Hellerman stated that he did not intend to hire new counsel to continue to represent defendants in this action.  (Hellerman Aff. ¶ 12.)  As such, the Clerk of the Court noted the defaults of defendants Karline Hellerman, Quality Blacktop, and Hellerman Driveways on August 21, 2020.  (See Clerk's Entries of Default, dated Aug. 21, 2020, Dkt. No. 31.)  On August 24, 2020, plaintiffs moved for default judgment against defendants Karline Hellerman, Quality Blacktop, and Hellerman Driveways.[4]  (See Motion for Default Judgment, dated Aug. 24, 2020 ("Pls.' Mot."), Dkt. No. 32.)  Judge Dearie referred plaintiffs' motion to me.  (See Order Referring Motion, dated Aug. 25, 2020.)

Plaintiffs assert claims under the FLSA and NYLL for unpaid overtime wages and a third-party beneficiary claim for prevailing wage violations.  (See Compl. ¶¶ 41, 43, 49; Pls.' Mot. ¶ 24.)  They additionally assert claims under the NYLL for failure to provide proper wage notices and wage statements.  (See Compl. ¶¶ 67-68, 70-72.)  Plaintiffs seek unpaid wages, liquidated damages, interest, attorney's fees, and costs.  (See generally Pls.' Mot.)

## DISCUSSION

### A.  Liability

A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability."  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  Once a default judgment is entered, the court "is required to accept all of [the plaintiffs'] factual allegations as true and draw all reasonable inferences in [the plaintiffs'] favor."  Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v.

---

[4] Plaintiffs do not move for default judgment against Steven Hellerman. In their motion for default judgment, plaintiffs note that Steven Hellerman declared personal bankruptcy on November 4, 2019 and his bankruptcy proceeding was granted on February 19, 2020. (Pls.' Mot. ¶¶ 12-13.)  Given this, I respectfully recommend that plaintiffs' claims against Steven Hellerman be dismissed. If plaintiffs have reasons for why the claims against Steven Hellerman should not be dismissed, they are directed to file an explanation within fourteen days.

Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).  The court must also "determine whether [the plaintiffs'] allegations establish [the defendants'] liability as a matter of law."  Id.

    1.  FLSA and NYLL Claims

Plaintiffs have sufficiently pleaded factual allegations that give rise to liability for unpaid overtime wages under the FLSA and NYLL.  Plaintiffs have also sufficiently pleaded claims under the NYLL for failure to provide wage statements and wage notices.  The extent to which they can recover damages from the defaulting defendants based upon these violations depends on whether: (1) their claims were timely; (2) they are covered employees under the FLSA and the NYLL; and (3) defendants were their employers under the FLSA and NYLL.

    i.  Timeliness

For a plaintiff's claims to be timely under the FLSA, they must have arisen within the two years prior to the filing of the complaint, or—for willful violations—within the three years prior.  29 U.S.C. § 255(a).  Here, the complaint, which was filed on August 27, 2018, alleges willful violations of the Act.  (See Compl. ¶¶ 32, 37-38, 42.)  And defendants have, by virtue of their default, waived the affirmative defense of statute of limitations.  See Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 87 (E.D.N.Y. 2012) (citing Day v. McDonough, 547 U.S. 198, 202 (2006); Davis v. Bryan, 810 F.2d 42, 44 (2d Cir. 1987); Archie v. Grand Cent. P'ship, 997 F. Supp. 504, 536 (S.D.N.Y. 1998)).  Therefore, I find that the FLSA's three-year statute of limitations applies.  Because all plaintiffs allege that they were not properly paid overtime wages at various periods of time between August 27, 2015 and August 27, 2018, their claims are timely under the FLSA.  (Compl. ¶¶ 11-13; Hernandez Aff. ¶¶ 2-3; Campos Aff.  ¶¶ 2-3, Ferdis Delgado Aff. ¶¶ 2-3; Yonis Reyes Aff.  ¶¶ 2-3; Ivan Delgado Aff.  ¶¶ 2-3; Nieves Aff.  ¶¶ 2-3; Wilmer Reyes Aff. ¶¶ 2-3.)  However, any portions of plaintiffs' claims that occurred prior to

August 27, 2015 are not timely under the FLSA.  Plaintiffs may only recover their federal claims

for unpaid overtime wages that occurred on or after August 27, 2015.  Plaintiffs may recover for

underpayment of wages prior to August 27, 2015 if their NYLL claims are timely.

       For plaintiffs' claims to be timely under the NYLL, their claims must have arisen

within the six years prior to the filing of the complaint.  See N.Y. LAB. L. §§ 198(3); 663(3).

Because plaintiffs allege that they were employed by defendants and that underpayment of

wages, wage notice violations, and wage statement violations occurred, in part, after August 27,

2012, their claims under the NYLL are timely.  (Compl. ¶¶ 11-13; Hernandez Aff. ¶¶ 2-3;

Campos Aff. ¶¶ 2-3, Ferdis Delgado Aff. ¶¶ 2-3; Yonis Reyes Aff. ¶¶ 2-3; Ivan Delgado Aff. ¶¶

2-3; Nieves Aff. ¶¶ 2-3; Wilmer Reyes Aff. ¶¶ 2-3.)  However, any portions of plaintiffs' claims

that occurred prior to August 27, 2012 are not timely.

       ii.  <u>Employee Coverage Under the FLSA</u>

       Because the minimum wage and overtime provisions of the FLSA and the NYLL

apply only to employees of covered employers, a plaintiff in a wage and hour action must show

that he or she was defendants' employee, and that defendants were employers subject to the

coverage of each statute.  For purposes of the FLSA, an employee is "any individual employed

by an employer," meaning any individual whom an employer "suffer[s] or permit[s] to work."

29 U.S.C. §§ 203(e)(1), (g).  Absent a statutory exemption, such individuals are protected by the

FLSA, so long as they work for a covered employer.  An employer is defined as "any person

acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C.

§ 203(d).  Person is defined as "an individual, partnership, association, corporation, business

trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a).  In addition,

for employees to be covered by the FLSA's provisions, they must show either that their

employer was an enterprise engaged in interstate commerce *or* that their work as employees regularly involved them in interstate commerce.  See 29 U.S.C. § 207(a).

Here, insofar as they allege that they were hired to work as full-time laborers and machine operators by Quality Blacktop and Hellerman Driveways for various construction projects, plaintiffs have adequately pleaded that they were employees to whom no statutory exemption applies.  (See Compl. ¶¶ 9, 16-17; Hernandez Aff. ¶¶ 2, 4-5; Campos Aff. ¶¶ 2, 4-5; Ferdis Delgado Aff. ¶¶ 2, 4-5; Yonis Reyes Aff. ¶¶ 2, 4-5; Ivan Delgado Aff. ¶¶ 2, 4-5; Nieves Aff. ¶¶ 2, 4-5; Wilmer Reyes Aff. ¶¶ 2, 4-5.)  In addition, plaintiffs allege that the corporate defendants, individually and collectively, had gross receipts of greater than $500,000 per year during the relevant period, and that they were engaged in interstate commerce.  (See Compl. ¶¶ 7-8.)  Thus, plaintiffs allege that they are covered employees under the FLSA.  This allegation is, on its face, conclusory, insofar as it restates the statutory definition of enterprise coverage without providing additional facts.  However, multiple courts in this district have held that similarly conclusory allegations of enterprise coverage may be accepted on a motion for default judgment where it may be inferred from the type of business enterprise that it was engaged in interstate commerce.  See, e.g., Remache v. Mac Hudson Grp., No. 14 CV 3118, 2018 WL 4573072, at *4 (E.D.N.Y. Sept. 7, 2018) (holding that "the enterprise that employed plaintiffs— i.e. a construction business—is a type that is typically involved in interstate commerce" and that plaintiffs had therefore sufficiently established that they were covered employees under the FLSA), report and recommendation adopted, 2018 WL 4568860 (E.D.N.Y. Sept. 24, 2018); Huerta v. Victoria Bakery, No. 10 CV 4754, 2012 WL 1107655, at *2 (E.D.N.Y. Mar. 30, 2012) ("[T]he original complaint . . . provides a sufficient basis . . . for inferring the requisite interstate commerce connection under the sensible approach adopted by other judges in this district. The

complaint alleges that plaintiffs . . . were employed as bread makers in a Brooklyn-based bakery with over half a million dollars in annual sales. It is inconceivable that some of the bread-making materials used by plaintiffs did not originate out of state or that the bakery did not sell its products outside the State of New York."); Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) ("Because even local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce, the test is met if Plaintiffs merely handled supplies or equipment that originated out-of-state . . . . The Court finds it logical to infer here that the cleaning supplies utilized by the Plaintiffs originated outside of New York. Plaintiffs' Complaint, therefore, fairly alleges that the Defendants are an 'enterprise engaged in commerce.' Consequently, the Court finds that Plaintiffs are covered by the FLSA." (internal citations and quotation marks omitted)).[5]  I agree with those courts that have adopted this approach, and therefore find that the enterprise that employed defendants was involved in interstate commerce. Plaintiffs have therefore sufficiently established that they are covered employees under the FLSA.

### iii.   Employer Status of Individual and Corporate Defendants

To determine whether a party qualifies as an "employer" under both the FLSA

---

[5] But see Perez v. Queens Boro Yang Cleaner, Inc., No. 14 CV 7310, 2016 WL 1359218, at *4 (E.D.N.Y. Mar. 17, 2016) ("While some judges in this district disagree, and have granted default judgments notwithstanding a similar lack of specificity in other cases, I conclude that requiring non-conclusory allegations is more consonant with applicable case law concerning pleading requirements, and that it does not frustrate the FLSA's remedial purpose to require a plaintiff seeking the statute's protection to explain in her pleading just what it is about her employer's business that brings it within the law's ambit." (footnote omitted)), report and recommendation adopted, 2016 WL 1337310 (E.D.N.Y. Apr. 5, 2016).

and NYLL, [6] the relevant inquiry is "whether the alleged employer possessed the power to control the workers in question, . . . with an eye to the economic reality presented by the facts of each case."  Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).  When examining the "economic reality" of a particular situation, courts will evaluate various factors, none of which, individually, is dispositive.  Id.  These factors include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  Id. (quoting Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)).  An individual within a company that indisputably employs a worker may be held personally liable as an "employer" where he or she exercises "operational control" over employees, meaning that "his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment."  Irizarry v. Catsimatidis, 722 F.3d 99, 110 (2d Cir. 2013).  At the same time, however,

> [e]vidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate "employer" status. Instead, to be an "employer," an individual defendant must possess control over a company's actual "operations" in a manner that relates to a plaintiff's employment.

Id. at 109.  In other words, "[o]wnership, or a stake in a company, is insufficient to establish that an individual is an 'employer' without some involvement in the company's employment of the employees."  Id. at 111.

---

[6] "Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA." Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011); see also Oaxaca v. Hudson Side Cafe Inc., No. 13 CV 2698, 2018 WL 4859152, at *8 (E.D.N.Y. Oct. 8, 2018); Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015).

"The FLSA contemplates that more than one employer may be responsible for violations of the statute." Remache, 2018 WL 4573072, at *5 (quoting Dixon v. Zabka, No. 11 CV 982, 2014 WL 6084351, at *3 (D. Conn. Nov. 13, 2014)).  There are two principal theories under which multiple entities may be held jointly and severally liable for unpaid wages: "single integrated enterprise" and "joint employer."  Grant v. HER Imports NY, LLC, No. 15 CV 5100, 2018 WL 3133454, at *10 (E.D.N.Y. Feb. 16, 2018), report and recommendation adopted, 2018 WL 1686103 (E.D.N.Y. Mar. 31, 2018).  These theories are mutually exclusive.  Id. (citing Arcuelo v. On-Site Sales & Mktg., LLC, 425 F.3d 193, 198 (2d Cir. 2005)).

The single integrated enterprise theory is a mechanism by which "courts may treat a group of distinct but closely affiliated entities as a single employer for FLSA purposes." Hernandez v. Delta Deli Mkt., No. 18 CV 375, 2019 WL 643735, at *3 (E.D.N.Y. Feb. 12, 2019).  "[S]eparate corporations under common ownership and management are a common example of such a single integrated enterprise."  Id.  (internal quotation marks omitted) (quoting Perez v. Westchester Foreign Autos, Inc., No. 11 CV 6091, 2013 WL 749497, at *7 (S.D.N.Y. Feb. 28, 2013)).

Courts determine whether multiple entities may be treated as a single employer under this theory by considering four factors: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control."  Juarez v. 449 Rest., Inc., 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014); see also Manzanares v. Your Favorite Auto Repair & Diagnostic Ctr., 17 CV 5001, 2018 WL 6718766, at *4 (E.D.N.Y. Nov. 7, 2018), report and recommendation adopted, 2018 WL 6517111 (E.D.N.Y. Dec. 11, 2018).

Here, plaintiffs are seeking to hold three defendants—two corporations and one individual—jointly and severally liable for their unpaid overtime wages.  (See Compl. ¶¶ 33-36; Pls.' Mot. ¶ 1.)  According to the complaint, Quality Blacktop and Hellerman Driveways operate as a single entity due to the fungible nature of their enterprise.  (Compl. ¶ 10.)  Plaintiffs also allege that defendants "used [p]laintiffs in a fungible manner inter changing [sic] them between work at [Hellerman Driveways], and [Quality Blacktop]."  (Id. ¶ 6.)  While plaintiffs have adduced only minimal evidence as to their employment relationship with the corporate defendants, they have averred that they were all employed by the defendants as full-time construction workers with regular salaries.  (Hernandez Aff. ¶¶ 2, 4-5, 10; Campos Aff. ¶¶ 2, 4-5, 10; Ferdis Delgado Aff. ¶¶ 2, 4-5, 10; Yonis Reyes Aff. ¶¶ 2, 4-5, 10; Ivan Delgado Aff. ¶¶ 2, 4-5, 10; Nieves Aff. ¶¶ 2, 4-5, 10; Wilmer Reyes Aff. ¶¶ 2, 4-5, 10.)  Additionally, the complaint alleges that each of the corporate defendants shared common ownership and management; Steven Hellerman is the sole owner, shareholder, officer and director of Hellerman Driveways, and Steven Hellerman, along with Karline Hellerman, is one of the owners, shareholders, officers, and directors of Quality Blacktop.  (See Compl. ¶¶ 3-5, 7.)  Plaintiffs assert that Karline Hellerman and Steven Hellerman, together, exercised control over both corporate defendants.  (See id. ¶¶ 5, 32, 35.)  Based on these facts, I find that the corporate defendants were a single integrated enterprise and that this enterprise was plaintiffs' employer.

As for the individual defendant, plaintiffs allege that Karline Hellerman is "the Chief Executive Officer, owner or sole or partial shareholder or agent" of Quality Blacktop.  (Id. ¶ 3.)  Plaintiffs also allege that she exercised control over the corporate defendants by virtue of her status as an owner, shareholder, director, and officer of Quality Blacktop.  (Id. ¶ 5.)  Through this position, plaintiffs allege, Karline Hellerman "consciously deprive[d] the plaintiffs of

overtime and/or other wages[.]"  (Id. ¶ 35.)  Based on these facts, I find that Karline Hellerman was one of plaintiffs' employers under the FLSA and the NYLL.  See Moon v. Kwon, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) ("The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.")

In light of defendants' default and plaintiffs' well-pleaded allegations, I find that it is appropriate to conclude that the corporate defendants, Quality Blacktop and Hellerman Driveways, and the remaining individual defendant, Karline Hellerman, were plaintiffs' employers.  Therefore, given that plaintiffs' claims are timely and plaintiffs qualify as covered employees, I respectfully recommend that defendants be held jointly and severally liable under the FLSA and the NYLL.

2.  Prevailing Wages Claim

Plaintiffs have also sufficiently pleaded factual allegations to establish defendants' liability for unpaid prevailing wages.  Prevailing wage claims may be brought either directly under NYLL §220 or as a common law claim for breach of contract.  Douglas v. Spartan Demolition Co. LLC, No. 15 CV 5126, 2018 WL 4521212, at *5 (S.D.N.Y. Sept. 21, 2018).  To bring a prevailing wage claim pursuant to Section 220, plaintiffs are required to demonstrate that they have first exhausted all administrative remedies.  See Ethelberth v. Choice Sec. Co., 91 F. Supp. 3d 339, 358-59 (E.D.N.Y. 2015).  There is no similar requirement for bringing a prevailing wage claim as a breach of contract claim.  See Hapanowicz v. Alexandria Tile Co., 11 CV 127, 2014 WL 1311441, at *6 (E.D.N.Y. Mar. 31, 2014).  Here, plaintiffs have not demonstrated, nor do they argue, that they have exhausted their administrative remedies.  Therefore, the common law breach of contract claim is the only available avenue for them to seek prevailing wages.

NYLL § 220 requires a contractor who undertakes a public works project to pay its employees prevailing wages or provide prevailing supplemental benefits.  See Hernandez v. NJK Contractors, Inc., No. 09 CV 4812, 2015 WL 1966355, at *43 (E.D.N.Y. May 1, 2015). "An employee of the contractor may commence a common law breach of contract claim as the intended third-party beneficiary of a public works contract."  Id. (quotations and citations omitted.)  To recover as a third-party beneficiary, plaintiffs must demonstrate "(1) 'that they are laborers, workmen, or mechanics' within the meaning of NYLL § 220 and (2) the work was 'entitled to prevailing wages under the statute.'"  Id. at **44 (quoting Ramos v. SimplexGrinnell LP, 740 F.3d 852, 856 (2d Cir. 2014)).  To plead a viable claim for breach of contract under New York law, "a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation omitted).

Plaintiffs claim that they were each laborers, workmen, or mechanics within the meaning of NYLL § 220.  (See Hernandez Aff. ¶ 4 ("As [] a full time construction worker, I routinely operated the paver, tractor and roller on the paving jobs[.]"); Campos Aff. ¶ 4 ("As a full time construction worker, I routinely worked as an asphalt raker[.]"); Ferdis Delgado Aff. ¶ 4 ("As[] a full time construction worker, I routinely operated the tractor and/or bobcat on the paving jobs[.]"); Yonis Reyes Aff. ¶ 4 ("As a full time construction worker I routinely worked as a laborer[.]"); Ivan Delgado Aff. ¶ 4 ("As a full time construction worker I routinely worked as a driver[.]"); Nieves Aff. ¶ 4 ("As a full time construction worker I routinely worked as a mason[.]"); Wilmer Reyes Aff. ¶ 4 ("As a full time construction worker I routinely operated the raker[.]".) They also allege that each plaintiff worked on public projects for which defendants

14

were required to pay prevailing wages. (Hernandez Aff. ¶ 9; Campos Aff. ¶ 9, Ferdis Delgado

Aff. ¶ 9; Yonis Reyes Aff. ¶ 9; Ivan Delgado Aff. ¶ 9; Nieves Aff. ¶ 9; Wilmer Reyes Aff. ¶ 9.)

In their affidavits, plaintiffs each claim:

> Throughout my employment I and similarly situated employees
> worked a minimum of sixteen hours per month on prevailing wage
> projects. Among the projects we worked on were Half Hollow
> Hills Library, The West Babylon UFSD Garage, West Babylon
> UFSD parking lot, the West Babylon Junior High School East and
> West, West Babylon UFSD High School, West Babylon UFSD
> Forest Ave Elementary School and South Bay Elementary School,
> to name a few.

(Hernandez Aff. ¶ 11; Campos Aff. ¶ 11, Ferdis Delgado Aff. ¶ 11; Yonis Reyes Aff. ¶ 11; Ivan

Delgado Aff. ¶ 11; Nieves Aff. ¶ 11; Wilmer Reyes Aff. ¶ 11.)  Accepting plaintiffs' well-

pleaded allegations as true, as the court must on a motion for default judgment, I find that the

plaintiffs have sufficiently established that they are entitled to recover as third-party beneficiaries

under the NYLL.

Turning next to the breach of contract claim, plaintiffs allege that defendants

"entered into contracts with one or more third parties to perform [] tree removal/pruning

services" and defendants agreed as part of such contracts to pay the plaintiffs a prevailing wage.

(Compl. ¶¶ 44-45.)  Plaintiffs also allege that they performed the contracted work.  (See id. ¶ 44.)

Plaintiffs further allege that defendants breached the contracts by failing to pay plaintiffs

prevailing wages, which damaged plaintiffs.  (Compl. ¶¶ 47-48; see also Hernandez Aff. ¶¶ 9-10;

Campos Aff. ¶¶ 9-10; Ferdis Delgado Aff. ¶¶ 9-10; Yonis Reyes Aff. ¶¶ 9-10; Ivan Delgado Aff.

¶¶ 9-10; Nieves Aff. ¶¶ 9-10; Wilmer Reyes Aff. ¶¶ 9-10.)  Accepting these well-pleaded

allegations as true, I find that plaintiffs have established a viable contract claim to recover

damages as third-party beneficiaries for unpaid prevailing wages.

**B. Damages**

Once the court has determined that the defaulting defendants are liable, "the court must conduct an inquiry to establish damages to a 'reasonable certainty.'"  Gunawan, 897 F. Supp. 2d at 83 (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).  "[T]he quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."  Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974).  "The burden is on the plaintiff to establish [his or her] entitlement to recovery."  Bravado Int'l Grp. Merch. Servs. v. Ninna, Inc., 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009).

1.  Hours Worked

"As a preliminary matter, when an employer fails to maintain accurate records or where… no records have been produced as a consequence of a defendant's default, courts have held that the 'plaintiff[s'] recollection and estimates of hours worked are presumed to be correct.'"  Gunawan, 897 F. Supp. 2d at 88 (quoting Zeng Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004)); see also Kim v. Kum Gang, Inc., No. 12 CV 6344, 2015 WL 2222438, at *25 (S.D.N.Y. Mar. 19, 2015) (where an employer fails to maintain records of wages and hours, plaintiffs "need only prove that they performed work for which they were not properly compensated and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference") (internal quotation marks and citations omitted); Hart v. Rick's Cabaret Int'l, Inc., 60 F. Supp. 3d 447, 466 (S.D.N.Y. 2014) ("It would be manifestly unfair to allow employers to avoid, or reduce, their liability simply because they kept shoddy records.").

Here, prior to the corporate defendants' defaults, defendants provided time records during discovery that established most of the hours worked by plaintiffs and the rates of

pay.  (Pls.' Mot. ¶ 49.)  The damages claimed by plaintiffs, except for Yonis Reyes, were

calculated based on defendants' time records.  (Id.; see also Damages Calculations, annexed as

Ex. D to Pls.' Mot., Dkt. No. 32-4.)  The damages claimed by Yonis Reyes were calculated

"based on his allegations, which have been corroborated by the other [p]laintiffs" because

defendants did not provide any time records for Yonis Reyes during discovery.  (Pls.' Mot ¶ 52.)

Because defendants have defaulted, where there is insufficient or incomplete information

provided by defendants, the court will presume the accuracy of plaintiffs' recollection and

estimates of hours worked, as stated in their affidavits and accompanying documents.  (See

Damages Calculations; Hernandez Aff.; Campos Aff.; Ferdis Delgado Aff.; Yonis Reyes Aff.;

Ivan Delgado Aff.; Nieves Aff.; Wilmer Reyes Aff.)

     2.  Overtime Compensation

     Plaintiffs are entitled to overtime compensation under both the FLSA and NYLL

at the rate of one and one-half times their regular rate of pay for the hours they worked in excess

of forty during a workweek.  See 29 U.S.C. § 207(a)(1); N.Y. COMP. CODES T. & RECS. tit. 12, §

142-2.2.  "'[T]he regular rate refers to the hourly rate actually paid [to] the employee for the

normal, non-overtime workweek for which he is employed.'"  Hernandez, 2015 WL 1966355, at

*41 (quoting Walling v. Youngerman Reynolds Hardwood Co., 325 U.S. 419, 424 (1945)).  The

method for calculating overtime is the same under both statutes, but plaintiffs may not receive

double damages.  See Martinez v. Alimentos Saludables Corp., No. 16 CV 1997, 2017 WL

5033650, at *15 (E.D.N.Y. Sept. 22, 2017).  Because plaintiffs' recovery will be greater under

the NYLL, damages will be calculated based on their NYLL unpaid wages claim.

     Plaintiffs assert that they did not always receive overtime compensation during

their employment.  (See Compl. ¶¶ 18, 41-43.)  Therefore, they are entitled to recover fifty

percent of their regular rate of pay for overtime hours worked during the six-year period prior to the filing of the complaint. Plaintiffs have submitted damages charts in support of their request for unpaid overtime wages. (Damages Calculations.) I have reviewed plaintiffs' unpaid overtime wage calculations, and I find that they are mostly complete and accurate. I have adjusted plaintiffs' calculations to ensure that the calculations only include overtime hours that accrued on or after August 27, 2012, and I have corrected for transcription errors in each chart.[7] I respectfully recommend that plaintiffs be awarded overtime wages as follows: $25,065 to Santos Hernandez, $24,642.78 to Ferdis Delgado, $9,824.75 to Manuel Campos, $10,018.75 to Ivan Delgado, $14,895.88 to Manuel Nieves, $25,962.13 to Wilmer Reyes, and $4,320 to Yonis Reyes, for a total unpaid overtime amount of $114,729.29.

3. Prevailing Wages

Plaintiffs also seek damages as third-party beneficiaries for defendants' failure to pay prevailing wages. (See Pls.' Mot. ¶¶ 53-55; Compl. ¶¶ 43-48.) Plaintiffs claim that they each did "a minimum of sixteen hours of prevailing wage work per month" for the entirety of their employment. (See Pls.' Mot. ¶ 54.) To calculate defendants' underpayment, plaintiffs used the prevailing wage rate indicated on the public work schedules for the relevant time period in conjunction with the job classification for each plaintiff. (Id. ¶ 55; see also Ex. E.)

I have reviewed plaintiffs' unpaid prevailing wage calculations, and I find that they are complete and accurate. (See Pls.' Mot. ¶ 55-62; Damages Calculations.) Accordingly, I respectfully recommend that plaintiffs be awarded unpaid prevailing wages as follows: $59,012.24 to Santos Hernandez, $48,943.20 to Ferdis Delgado, $19,918.48 to Manuel Campos,

---

[7] In reviewing plaintiffs' charts, I identified transcription errors in the "overtime hours" input. Therefore, in my adjustments, I assumed the "hours worked" input was accurate and fixed the "overtime hours" and "o/t due" accordingly.

$12,626.64 to Ivan Delgado, $32,351.28 to Manuel Nieves, $48,466.96 to Wilmer Reyes, and $7,841.68 to Yonis Reyes, for a total unpaid prevailing wages amount of $229,160.48.

4.   Liquidated Damages

Plaintiffs seek an award of liquidated damages under both the FLSA and NYLL. (See Compl. ¶ 42; Pls.' Mem. ¶¶ 50, 52, 58; Damages Calculations.)  The FLSA and NYLL each allow for liquidated damages awards equaling one hundred percent of the wages due.  See 29 U.S.C. § 260; N.Y. LAB. LAW N.Y. § 663(1).  However, plaintiff cannot recover cumulative liquidated damages under both statutes for the same time period.  See Rana v. Islam, 887 F.3d 118, 119 (2d Cir. 2018) (per curiam).  When two forms of damages are available for the same violation, courts have generally awarded the higher of the two.  Man Wei Shiu v. New Peking Taste Inc., No. 11 CV 1175, 2014 WL 652355, at *13 (E.D.N.Y. Feb. 19, 2014).  Thus, I respectfully recommend that plaintiffs be awarded liquidated damages under the NYLL.  It also bears noting that plaintiffs are only entitled to NYLL liquidated damages for their unpaid overtime claims.  Plaintiffs' prevailing wage claim is not subject to liquidated damages because the recovery is under a contract theory and not the statute.  See Hernandez, 2015 WL 1966355, at *49; Gurung v. Malhotra, 851 F. Supp. 2d 583, 593 (S.D.N.Y. 2012).

Under the NYLL, "liquidated damages are presumed unless defendants can show subjective good faith."  Zubair v. EnTech Eng'g, P.C., 900 F. Supp. 2d 355, 360 n.3 (S.D.N.Y. 2012); see N.Y. LAB. LAW § 663(1).  As defendants have defaulted, they have not established good faith to rebut the liquidated damages presumption.  Accordingly, I respectfully recommend that plaintiffs be awarded $114,729.29 in liquidated damages.

5.   <u>Wage Notices and Statements</u>

Plaintiffs further request statutory damages for defendants' failure to provide wage notices and wage statements.  (See Pls.' Mot. ¶ 51; Compl. ¶¶ 67-69, 70-73).  The NYLL requires employers to provide wage notices to employees at the time of hiring, as well as accurate wage statements at the time wages are paid.  <u>See</u> NYLL §§ 195(1)(a) & (3).  Plaintiffs have alleged that they received no such notices or statements either at the beginning or for the duration of their employment.  (<u>See</u> Compl. ¶¶ 67, 70, 72.)  Under NYLL § 198(1-b), employees are entitled to recover wage-notice statutory damages of $50 dollars "for each work day that the violations occurred or continue to occur," not to exceed $5,000.  And under NYLL § 198(1-d), employees are entitled to recover wage-statement statutory damages of $250 dollars "for each work day that the violations occurred or continue to occur," not to exceed $5,000.  Therefore, I respectfully recommend that each plaintiff be awarded an additional $10,000.

6.   <u>Prejudgment Interest</u>

Plaintiffs additionally request and are entitled to prejudgment interest under the NYLL.  <u>See</u> N.Y. LAB. LAW § 663; <u>Fermin v. Las Delicias Peruanas Rest., Inc.</u>, 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015) ("In contrast to the FLSA, the NYLL permits an award of both liquidated damages and prejudgment interest.").  "Prejudgment interest is calculated on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law."[8] <u>Fermin</u>, 93 F. Supp. 3d at 49 (quoting <u>Mejia v. East Manor USA Inc.</u>, No. 10 CV 4313, 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013) (internal brackets removed), <u>report and recommendation adopted</u>, 2013 WL 2152176 (E.D.N.Y. May 17, 2013)).

---

[8] Prejudgment interest is also unavailable for violations of the wage statement or wage notice provisions.  <u>See</u> N.Y. LAB. LAW § 198(1-b), (1-d).

The statutory rate of interest is nine percent per annum.  N.Y. C.P.L.R. § 5004.
Where damages were incurred at various times, interest may be calculated from a single
reasonable intermediate date.  Id. § 5001(b).  The midpoint of a plaintiff's employment is a
reasonable intermediate date for purposes of calculating prejudgment interest.  See Fermin, 93
F. Supp. 3d at 49; Wicaksono v. XYZ 48 Corp., No. 10 CV 3635, 2011 WL 2022644, at *9
(S.D.N.Y. May 2, 2011), report and recommendation adopted, 2011 WL 2038973 (S.D.N.Y.
May 24, 2011).  I determine the midpoint of each plaintiff's employment to be as follows:

| | |
|---|---|
| Santos Hernandez | September 24, 2015 |
| Ferdis Delgado | February 26, 2016 |
| Manuel Campos | October 6, 2017 |
| Ivan Delgado | August 10, 2015 |
| Manuel Nieves | August 25, 2016 |
| Wilmer Reyes | June 24, 2016 |
| Yonis Reyes | August 13, 2015 |

I respectfully recommend that prejudgment interest at the rate of nine percent per annum be
awarded on:

- Santos Hernandez's wage damages of $25,065.00 from September 24, 2015 to the date of entry of judgment, which amounts to a per diem interest rate of $6.18 ($25,065 x .09/365);

- Ferdis Delgado's wage damages of $24,642.78 from February 26, 2016 to the date of entry of judgment, which amounts to a per diem interest rate of $6.08 ($24,642.78 x .09/365);

- Manuel Campos' wage damages of $9,824.75 from October 6, 2017 to the date of entry of judgment, which amounts to a per diem interest rate of $2.42 ($9,824.75 x .09/365);

- Ivan Delgado's wage damages of $10,018.75 from August 10, 2015 to the date of entry of judgment, which amounts to a per diem interest rate of $2.47 ($10,018.75 x .09/365);

- Manuel Nieves' wage damages of $14,895.88 from August 25, 2016 to the date of entry of judgment, which amounts to a per diem interest rate of $3.67 ($14,895.88 x .09/365);

- Wilmer Reyes' wage damages of $25,962.13 from June 24, 2016 to the date of entry of judgment, which amounts to a per diem interest rate of $6.40 ($25,962.13 x .09/365); and

- Yonis Reyes' wage damages of $4,320 from August 13, 2015 to the date of entry of judgment, which amounts to a per diem interest rate of $1.07 ($4,320 x .09/365).

7.  Post-Judgment Interest

Plaintiffs are also entitled to post-judgment interest under 28 U.S.C. § 1961(a). Section 1961 provides that "interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Under the statute, interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment." Id. Accordingly, I respectfully recommend that plaintiffs be awarded statutory post-judgment interest. See Fermin, 93 F. Supp 3d at 53 (finding that post-judgment interest is mandatory).

8.  Attorney's Fees and Costs

As a prevailing party, plaintiffs are entitled to attorney's fees and costs under both statutes. See 29 U.S.C. § 216(b); N.Y. LAB. LAW §§ 198, 663(1)). They seek an award of attorney's fees in the amount of $29,015 and costs in the amount of $1,000. (See Pls.' Mot. ¶¶ 67-68.)

District courts have "considerable discretion in determining what constitutes reasonable attorney's fees in a given case." Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 151 (2d Cir. 2008). When exercising their discretion to determine the

reasonableness of attorney's fees, courts in this circuit use the "presumptively reasonable fee" standard. Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 183, 190 (2d Cir. 2008). The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011). In addition, an application for attorney's fees must be supported "by accurate, detailed, and contemporaneous time records." Labarbera v. ASTC Labs., Inc., 752 F. Supp. 2d 263, 277 (E.D.N.Y. 2010).

I begin by assessing whether plaintiff's counsel requests a reasonable hourly rate. A reasonable hourly rate is "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190. Reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)). A judge may determine prevailing rates based on evidence presented or his or her own knowledge of rates charged in the community. Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989). The "community" is generally considered to be the district where the court sits. See Arbor Hill, 522 F.3d at 190. Also, "the nature of representation and type of work involved in a case are critical ingredients in determining the 'reasonable' hourly rate." Id. at 184 n.2 (citations omitted).

As a preliminary matter, counsel has satisfied the contemporaneous time records requirement. (See Attorney Time Records, annexed as Ex. F to Pls.' Mot., Dkt. No. 32-6.) Plaintiff's counsel requests an hourly rate of $350. (Pls.' Mot. ¶ 64.) I find this rate to be

reasonable.  Delvis Melendez is a sole practitioner with over twenty years of experience

litigating labor and employment cases.  (Id. ¶ 65.)  A rate of $350 per hour is commensurate with

the rates routinely awarded in this district to attorneys with comparable backgrounds and

experience.  See, e.g., Godwin v. Buka New York Corp., No. 20 CV 969, 2021 WL 612336, at

*13 (E.D.N.Y. Feb. 17, 2021) (finding a rate of $400 per hour for a partner reasonable); Martinez

v. New 168 Supermarket LLC, No. 19 CV 4526, 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19,

2020) (noting that, in this district, courts routinely approve hourly rates of  $200 to $450 for

partners and $200 to $325 for senior associates), report and recommendation adopted, 2020 WL

5259056 (E.D.N.Y. Sept. 3, 2020); Cohen v. Narragansett Bay Ins. Co., No. 14 CV 3623, 2014

WL 6673846, at * 3, n. 4 (E.D.N.Y. Nov.24, 2014) (finding an hourly rate of $350 reasonable for

an experienced attorney handling a case that was not particularly complex).

   I next look to the reasonableness of the hours billed.  To determine the

reasonableness of the hours spent on the litigation, the court must make "a conscientious and

detailed inquiry into the validity of the representations that a certain number of hours were

usefully and reasonably expended."  Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195,

2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting Lunday v. City of Albany, 42 F.3d

131, 134 (2d Cir. 1994)).  The "critical inquiry is 'whether, at the time the work was performed,

a reasonable attorney would have engaged in similar time expenditures.'"  Id. (quoting Grant v.

Martinez, 973 F.2d 96, 99 (2d Cir. 1992)).  The court may exclude those hours that it finds

excessive, redundant, or otherwise unnecessary.  See Gordon v. Site 16/17 Dev., LLC, No. 11

CV 427, 2011 WL 3251520, at *6 (S.D.N.Y. July 28, 2011).

   Here, counsel seeks compensation for 82.9 hours of attorney work.  (Pls.' Mot. ¶

64.)  This amount would be considered excessive in an ordinary FLSA default.  See, e.g., Xin

Long Lin v. New Fresca Tortillas, Inc., No. 18 CV 3246, 19 WL 3716199, at *9 (E.D.N.Y. May 1, 2018) (finding 57.97 hours to be "grossly excessive" in an FLSA default and applying a twenty percent reduction in hours), report and recommendation adopted, 2019 WL 3714600 (E.D.N.Y. May 28, 2019); Ye Hong v. 7 Express Rest. Corp., No. 17 CV 2174, 2019 WL 2261091, at *8 (E.D.N.Y. Mar. 14, 2019) (finding 94.37 hours to be excessive in an FLSA default involving six plaintiffs and six defendants, and reducing non-duplicative hours by one-third), report and recommendation adopted as modified, 2019 WL 1429584 (E.D.N.Y. Mar. 29, 2019); see also Maldonado, 2012 WL 1669341, at *13 (finding fifty-five hours to be "the high-end" of what is reasonable in an FLSA default).  However, this is not an ordinary FLSA default; this case was litigated for nearly two years before the corporate defendants defaulted.  Therefore, having reviewed the billing records submitted by counsel and being familiar with the proceedings to date, I find the requested number of hours reasonable.

Plaintiffs additionally request compensation for $1,000 in costs, representing $400 for this court's filing fee, $300 in service of process fees, and $300 in mediation costs. (See Pls.' Mot. ¶ 68.)  "Ordinarily, plaintiffs may recover costs relating to filing fees, process servers, postage, and photocopying."  Pichardo v. El Mismo Rincon Latino Corp., No. 17 CV 7439, 2018 WL 4101844, at *11 (E.D.N.Y. Aug. 7, 2018) (quotations and citation omitted), report and recommendation adopted, 2018 WL 4100480 (E.D.N.Y. Aug. 28, 2018); see also LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998).  Accordingly, I find plaintiff's requested costs to be reasonable out-of-pocket expenses.

**CONCLUSION**

For the reasons stated above, I respectfully recommend that plaintiffs' motion for default judgment be granted as to defendants Quality Blacktop, Hellerman Driveways, and Karline Hellerman.  In terms of damages, I recommend that plaintiffs be awarded $558,634.06, consisting of $114,729.29 in unpaid overtime compensation, $229,160.48 in unpaid prevailing wages, $114,729.29 in liquidated damages, $70,000 for wage notice and wage statement violations, $29,015 in attorney's fees, and $1,000 in costs, plus prejudgment interest and post-judgment interest.  Finally, I recommend that the claims against defendants Steven Hellerman, John Doe Prime Contractors 1 through 10, and John Doe Surety Company 1 through 10 be dismissed.

Any objections to this report and recommendation must be filed electronically or with the Clerk of Court, with courtesy copies to Judge Dearie and to my chambers, within fourteen (14) days.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,

_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
        March 10, 2021